# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STEVEN JOHNSON,

          Petitioner,

     -vs-                                      Case No. 11-C-865

**JEFFREY PUGH, Warden,**
**Stanley Correctional Institution,**

          Respondent.

## DECISION AND ORDER

Steven Johnson challenges his conviction in state court for robbing a bank by threat of force. The bank teller, Alisha Harvey, told police that "an individual entered the bank ... where she was working. The individual had his face partially covered by a mask, came up to her teller window, and slammed an item that she believed may have been a cane or some other type of weapon on the top of her desk and demanded money. She . . . opened the drawer and the defendant then took the money from her presence and she allowed him to do so because of his conduct threatening force against her." Johnson himself confessed to the crime, telling police that he "had in fact gone to the [bank] because he needed money. He stated that he had taken a plastic type mat, had rolled it up so that it may have appeared to be a cane or another weapon, slammed it on the counter at the . . . bank and demanded money from the teller. He stated that the teller did in fact turn money over to him and that when he exited the bank, an alarm went off and he ended up throwing part of the money to stop the alarm and the rest of the money was used for the purchase of drugs."

Johnson was found guilty after a jury trial, where the jury received the following evidence: (1) surveillance video taken by the bank during the robbery; (2) testimony of Rhonda Holmes, a friend of Johnson, who identified him as the individual in the surveillance video; (3) testimony that DNA evidence linked Johnson to the robbery; and (4) Johnson's tape recorded confession to police. Johnson raised several claims on direct appeal, all of which were found by the court of appeals to be "wholly without merit." *State of Wisconsin v. Johnson*, No. 2010AP987-CR (Wis. Ct. App. May 24, 2011), at 2. Johnson timely filed the instant petition, and after an initial review, the Court identified four cognizable claims for relief: (1) that he was arrested without probable cause; (2) that the identification by Rhonda Holmes was unreliable; (3) that he was never advised of his constitutional rights before his confession; and (4) that he was denied his right to self-representation.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the review of state court convictions in federal habeas corpus proceedings. A federal court may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if the state court either incorrectly laid out governing United States Supreme Court precedent or decided a case differently than a factually and materially indistinguishable Supreme Court case. § 2254(d)(1). A state court unreasonably applies Supreme Court precedent when it correctly identifies the governing legal rule but unreasonably applies it to

-2-

the facts of a case; unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply; or unreasonably refuses to extend that principle to a new context in which it should apply. § 2254(d)(1); *Ellison v. Acevedo*, 593 F.3d 625, 632 (7th Cir. 2010).

**Arrest without probable cause**. Whether the police had probable cause to arrest Johnson is not cognizable in habeas corpus unless the State did not provide a full and fair opportunity to litigate the issue. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Setting aside the rule in *Stone*, Johnson's claim is without merit in the first instance because his arrest was clearly supported by probable cause. As the court of appeals explained, "at the time he arrested Johnson, Officer Strasser had a video of a man matching Johnson's description robbing a bank and an acquaintance of Johnson's had identified him as the man in the video. The video, coupled with the identification, is enough evidence to 'lead a reasonable police officer to believe that [Johnson] probably committed . . . a crime.' In other words, Officer Strasser had probable cause to arrest Johnson without a warrant." ECF No. 37-5, at 6.

**Identification from surveillance tape**. With respect to identification procedures, due process is primarily concerned with the substantial likelihood of misidentification. *United States v. Hawkins*, 499 F.3d 703, 707 (7th Cir. 2007) (citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Braithwaite*, 432 U.S. 98, 106 (1977). Therefore, the court conducts a two-step analysis: first, the defendant must establish that the

-3-

identification procedure was unduly suggestive; second, the court must determine, under the totality of the circumstances, whether the identification was nonetheless reliable. *United States v. Rogers*, 387 F.3d 925, 936 (7th Cir. 2004).

Here, the identification was made not by a witness to the crime, but by Johnson's friend, Rhonda Holmes, identifying Johnson as the individual robbing the bank in surveillance video footage. Holmes "testified at trial that on the day of the bank robbery Johnson had taken her car without permission. She identified the individual in the bank surveillance video as Johnson, in considerable part relying upon the fact that Johnson was wearing a hat that her mother had given her, which was in her car on the morning of the robbery. She also recognized the shirt that Johnson was wearing as one he had been wearing on the night before the robbery." ECF No. 37-5, at 10-11. This was a reliable identification that did not violate due process. *See, e.g., United States ex rel. Calderon v. Washington*, No. 87-C-6601, 1987 WL 17472, at *1 (N.D. Ill. Sept. 21, 1987) ("Unlike recollection of a stranger encountered in the course of a crime, recognition of an acquaintance does not carry with it a substantial likelihood of misidentification requiring further indicia of reliability to ensure a fair trial . . .").

*Miranda* **claim.** Johnson asserts in his petition that the arresting officer never advised him of his constitutional rights. The court of appeals addressed this issue in a footnote: "Throughout his brief, Johnson makes several passing references to his confession, seemingly contending that he was not read his *Miranda* rights and that his confession was otherwise coerced. However, he does not set forth this issue in his lengthy list of 'Issues on

-4-

Appeal' . . . nor does he elaborate upon his claim, beyond making bold, unsubstantiated assertions. As we have stated previously, we do not address issues that are inadequately briefed and lack discernable merit." ECF No. 37-5, at 9 n.7. Therefore, Johnson procedurally defaulted this claim. "To avoid procedural default, 'a habeas petitioner must fully and fairly present his federal claims to the state courts.' 'Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court.'" *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (internal citations omitted).

**Self-representation.** The Sixth Amendment right to self-representation is well-established, but it is not absolute. *Martinez v. Ct. of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 161 (2000). In particular, the right does not protect defendants who abuse it by disrupting judicial proceedings. *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975). In the pre-trial stage, the trial court initially granted Johnson's motion to proceed *pro se* (with the provision of standby counsel), but the State moved to reconsider in light of the issue of DNA evidence. Johnson renewed his motion on the eve of trial, and the trial court denied the motion again:

> Johnson had almost four months after the May 2009 hearing to familiarize himself with DNA evidence and to assist his counsel in preparing for trial. Instead, he sat on his hands and told the court in August 2009 that he was unaware that DNA evidence was at issue, despite having been ordered by the court to give a DNA sample in February 2009 and despite discussing his competency to defend against DNA evidence during the May 2009 hearing. Johnson's misrepresentation to the court demonstrated an inability to grasp basic courtroom decorum and ethics, and suggested that his desire to represent himself was an

> attempt to delay court proceedings and interfere with the administration of justice. That Johnson's desire to represent himself was perhaps not sincere was confirmed by his refusal to represent himself on all issues but DNA, and his belligerent behavior towards the court after its ruling.

ECF No. 37-5, at 15. The foregoing is a reasonable application of Supreme Court precedent. *United States v. Joos*, 638 F.3d 581, 587 (8th Cir. 2011) ("the right to self-representation 'does not exist . . . to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process'") (internal citation omitted).

Finally, outside of the four issues flagged by the Court's initial screening order, Johnson has attempted to amend his petition to assert a new claim: that the state did not prove the elements of robbery by threat of force because the victim (the bank teller) did not testify at trial. The Court agrees that the State "presented sufficient evidence during the trial from which the jury could conclude beyond a reasonable doubt that Johnson robbed the bank by threat of force, to wit: surveillance video, Holmes's testimony identifying Johnson in the video, DNA evidence, and Johnson's confession (which the jury was free to accept as true even if Johnson now denies its veracity)." ECF No. 37-5, at 17. This was a reasonable and correct application of Supreme Court precedent. The argument that no rational trier of fact could have found Johnson guilty after hearing his confession and seeing him commit the crime on video is patently frivolous. "When a petitioner in a habeas action challenges the sufficiency of the evidence, our task is to determine whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.'" *Barger v. State of Ind.*, 991 F.2d 394, 398 (7th Cir. 1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In connection with this order, the Court must "issue or deny a certificate of appealability . . ." Rule 11(a), Rules Governing Section 2254 Cases. The Court will not issue a certificate because it is not debatable among reasonable jurists whether this petition should have been resolved in a different manner or that the issues deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(2).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Johnson's motions to amend/correct his petition [ECF Nos. 39, 43] are **GRANTED**;

2. Johnson's motions for an evidentiary hearing [ECF Nos. 41, 44] are **DENIED**;

3. Johnson's motion for summary judgment [ECF No. 47] is **DENIED**; and

4. Johnson's petition is **DENIED**. This matter is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of August, 2012.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**